UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
ELYSE McCANTS,

        Plaintiff,

11 CV 3511 (SJ) (LB)

<u>MEMORANDUM
AND ORDER</u>

-against-


THE CITY OF NEW YORK, NYPD
POLICE OFFICER JAMES ZOZZARO,
Shield #28340, NYPD POLICE
OFFICER JERONNIE GLANVILLE,
Shield #7529, NYPD SGT. JOHN BEGG,
Shield #3475, and NYPD SGT. JANINE
SHANK, Shield #4478,

        Defendants.
-------------------------------------------------X

A P P E A R A N C E S

BARKET MARION EPSTEIN & KEARON LLP
666 Old Country Road
Suite 700
Garden City, NY 11530
By:   Amy Beth Marion
*Attorney for Plaintiff*

NEW YORK CITY LAW DEPARTMENT
100 Church Street
New York, NY 10007 Brooklyn, NY 11201
By:   Matthew J. Modafferi
*Attorneys for Defendants*

JOHNSON, Senior District Judge:

On July 21, 2011, Elyse McCants ("Plaintiff" or "McCants") commenced this action against Defendants City of New York, Police Officers James Zozzaro, Jeronnie Glanville, and Sergeants John Begg and Janine Shank (collectively, "Defendants") pursuant to 42 U.S.C. § 1983, claiming violations of her rights under the Fourth, Fifth and Fourteenth Amendments, and claiming violations of her rights under the Constitution of the State of New York. Plaintiff asserts causes of action for unlawful search and seizure, invasion of privacy, destruction of property, supervisor liability, municipal liability, failure to intervene, and state law claims for assault, battery, and negligent hiring, training, supervision, and retention.

Presently before this Court is Defendants' partial motion for summary judgment pursuant to Rule 56 with respect to the municipal liability claim and state law claim for negligent hiring, training, supervision, and retention. For the reasons stated herein, Defendants' Partial Motion for Summary Judgment is GRANTED.

## I. BACKGROUND

On May 5, 2010 through May 6, 2010, at around midnight, Plaintiff Elyse McCants ("McCants" or "Plaintiff") called 911 claiming that her 19-year-old daughter Dara McCants "was smoking weed in the house." (Defs.' 56.1 ¶ 17.) Plaintiff Elyse McCants was 56 years old at the time of the incident. (Defs.' 56.1 ¶

5.) Plaintiff's daughter described her mother as "slurring her words" and being "very loud," "angry," and "drunk" at the time of the incident. (Defs.' 56.1 ¶¶ 20, 24.) Defendant Officer Zozzaro and Defendant Officer Glanville arrived less than an hour after Plaintiff's 911 call. (Defs.' 56.1 ¶ 15.) Plaintiff told the officers that she was not letting her daughter back in the house, and closed and locked the front door. (Defs.' 56.1 ¶¶ 28–29.) Though accounts of the degree and manner vary, all parties agree that an officer then kicked in the screen door, put Plaintiff face down on the ground, and handcuffed her. (Defs.' 56.1 ¶¶ 48–49; Pl.'s Opp. Mem. at 4; Elyse McCants Dep., at Pl.'s 56.1, Ex. A, at 115–19.) Defendants claim it was in order to "prevent Plaintiff from hurting herself, the officers, or her daughter." (Defs.' 56.1 ¶¶ 32–33.) The officers made this determination on the basis that Plaintiff was "yelling, screaming nonsensically and acting erratic." (Defs.' 56.1 ¶ 35; Zozzaro Dep., Ex. F at 67; Glanville Dep., Ex. E, at 67, 85.) She was classified as an Emotionally Disturbed Person ("EDP"), and was seated on a park bench in front of her house. (Defs.' 56.1 ¶¶ 34, 36.) When the ambulance arrived, the officers removed the handcuffs, and Plaintiff was taken to a psychiatric ward emergency room. (Defs.' 56.1 ¶ 42.) The ambulance report stated that a "56 year old female found sitting on stoop in front of house with NYPD yelling, screaming, crying. . . . At present, patient crying, ranting a danger to self and others . . . ." (Ambulance Call Report, Defs.' 56.1, Ex. H.) At the hospital, Plaintiff was diagnosed with Generalized Anxiety Disorder and released. (Defs.' 56.1 ¶¶ 47–48.)

With respect to "Mentally Ill or Emotionally Disturbed Persons," the New York City Police Department Patrol Guide describes the procedure for when an NYPD officer "reasonably believes that a person who is apparently mentally ill or emotionally disturbed <u>must</u> be taken into protective custody because the person is conducting himself in a manner likely to result in a serious injury to himself or others." The Guide instructs that, upon arrival at the scene, the officer should "assess the situation as to threat of immediate serious physical injury to EDP, other persons present, or members of the service. . . ." (Patrol Guide, Defs.' 56.1, Ex. J, at 1.) The Guide continues, "[i]f emotionally disturbed person's actions constitute immediate threat of serious physical injury or death to himself or others" then an NYPD officer should "[t]ake reasonable measures to terminate or prevent such behavior." (<u>Id.</u>)

On February 11, 2014, the Court denied Defendants' application requesting to move for summary judgment, finding that material issues of fact existed. On March 27, 2014, the Court granted the City's motion for reconsideration, allowing the City to file a partial Motion for Summary Judgment with respect to the municipal liability claim and the negligent hiring claim.

## II. <u>DISCUSSION</u>

A. <u>Summary Judgment Standard</u>

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The burden is on the movant to establish the absence of any genuine issue of material fact. Celotex Corp., 477 U.S. at 323; see also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). It is clear that "[i]n moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absenanol35ce of evidence to support an essential element of the nonmoving party's claims." Goenaga, 51 F.3d at 18; see also Celotex Corp., 477 U.S. at 324. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986) (citations omitted).

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson, 477 U.S. at 248). If the Court recognizes any material issues of fact, summary judgment is improper, and the motion must be denied. See Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985).

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247–48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

B. Municipal Liability

Plaintiff asserts municipal liability claims based on the conduct of Sergeant John Begg and Sergeant Janine Shank, who Plaintiff claims were "supervisors and final decision makers as a matter of policy and practice." (Am. Compl. ¶¶ 41–51.) Plaintiff claims that the NYPD has a pattern or practice of physical and emotional abuse of those deemed to be EDPs at the hands of police officers who lack knowledge or training on how to properly make such a determination. The Government argues that Plaintiff's claims fail because a single incident is

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247–48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

B. Municipal Liability

Plaintiff asserts municipal liability claims based on the conduct of Sergeant John Begg and Sergeant Janine Shank, who Plaintiff claims were "supervisors and final decision makers as a matter of policy and practice." (Am. Compl. ¶¶ 41–51.) Plaintiff claims that the NYPD has a pattern or practice of physical and emotional abuse of those deemed to be EDPs at the hands of police officers who lack knowledge or training on how to properly make such a determination. The Government argues that Plaintiff's claims fail because a single incident is

If the moving party discharges its burden of proof under Rule 56(c), the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading." Anderson, 477 U.S. at 256. Indeed, "the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Id. at 247–48. Rather, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at 248; see also Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1224 (2d Cir. 1999) ("When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.").

B. Municipal Liability

Plaintiff asserts municipal liability claims based on the conduct of Sergeant John Begg and Sergeant Janine Shank, who Plaintiff claims were "supervisors and final decision makers as a matter of policy and practice." (Am. Compl. ¶¶ 41–51.) Plaintiff claims that the NYPD has a pattern or practice of physical and emotional abuse of those deemed to be EDPs at the hands of police officers who lack knowledge or training on how to properly make such a determination. The Government argues that Plaintiff's claims fail because a single incident is

insufficient to support a claim under <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658 (1978), and that Plaintiff's cannot attempt to incorporate notice of other lawsuits in establishing such a claim.

Under <u>Monell</u>, local governments and their agencies can be sued as "persons" under 28 U.S.C. § 1983 and may be liable where a government policy or custom gives rise to a constitutional deprivation. A "custom" does not require official sanction; instead, a custom "may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997) (citations omitted). To sustain a claim for municipal liability, "[a] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Id.</u> "[A] plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Wray v. City of New York</u>, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." See <u>Ricciuti v. New York City Transit Auth.</u>, 941 F.3d 119, 123 (2d Cir. 1991).

Assessing a claim for <u>Monell</u> liability against an individual defendant requires additional analysis. When examining an individual's status as a

7

policymaker under Monell, although "the official in question need not be a municipal policymaker for all purposes," that individual "must be 'responsible under state law for making policy in that area of the [municipality's] business,'" Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (emphasis added in Jeffes ) (quoting St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)), or must "have the power to make official policy on a particular issue," Id. at 57 (emphasis added in Jeffes ) (quoting Jett v. Dallas Indep. Sch. Dist. 491 U.S. 701, 737 (1989)), or must "possess[ ] final authority to establish municipal policy with respect to the action ordered." Id. at 57 (emphasis added in Jeffes) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). "Thus, the court must 'ask whether [the] governmental official [is a] final policymaker[ ] for the local government in a particular area, or on [the] particular issue' involved in the action." Id. (quoting McMillian v. Monroe County, Ala., 520 U.S. 781, 785 (1997)).

Plaintiff has presented only conclusory allegations that the conduct was the result of an unconstitutional custom or policy of the City, rather than an isolated incident. Though Plaintiff points to other lawsuits on related issues,[1] the "citation

---

[1] The cases cited fail to establish a "policy" as required when asserting a Monell claim. For example, Plaintiff points to Cerbelli v. City of New York, No. 99-CV-6846, 2006 WL 2792755 (E.D.N.Y. Sept. 27, 2006) to stand for the proposition that the NYPD refuses to implement a CIT program which, Plaintiff provides, is "evidence of not only a pattern of wrongful behavior, but also the municipality's repeated failure to respond." (Pl.'s Opp. at 11.) However, there, the Court found that the plaintiff offered "only vague, conclusory arguments to contest NYPD policy toward EDPs. She asserts without legal or factual support that stripping officers of the discretion to decide when and whether to encircle, shout commands at, and fire weapons at EDPs would improve police training and prevent constitutional violations. This argument does not raise a triable issue of fact." Cerbelli v. City of New York, No. 99-CV-6846, 2008 WL 4449634, at *16 (E.D.N.Y. Oct. 1, 2008).

to various lawsuits . . . is not probative of the existence of an underlying policy that could be relevant here." Jean-Laurent v. Wilkerson, 461 F. App'x 18, 22–23 (2d Cir. 2012). Plaintiff specifically argues that Tsesarskaya v. City of New York establishes a "pattern of wrongful behavior" and the "municipality's repeated failure to respond" with respect to the treatment of EDPs. (Pl.'s Opp. at 11.) However, the Court in Tsesarkaya specified that the 911 operator's advice to open the door so that officers would not break down the door was direct evidence of a "policy of breaking down apartment doors where the occupant refused to open the door." There was no such warning in the instant case. Instead, the officers have testified that, after a family dispute, they determined the need to enter the apartment to "prevent Plaintiff from hurting herself, the officers, or her daughter." (Defs.' 56.1 ¶¶ 32–33; Defs.' 56.1 Ex. E, Glanville Dep, at 67; Defs.' 56.1 Ex. F, Zozarro Dep. at 82.) They made this determination on the basis that Plaintiff was "yelling, screaming nonsensically and acting erratic." (Defs.' 56.1 ¶ 35.) The officers' determination of an imminent threat factually distinguishes this case. Though it is apparent to the Court that these officers may have exercised poor judgment in making this determination, Plaintiff has not met her burden in establishing an unconstitutional policy or practice beyond an isolated incident.

Furthermore, Plaintiff alleges that the City's refusal to adopt a separate method of handling EDP cases establishes the City's unconstitutional policy of handling EDP cases. Plaintiff's primary evidentiary support for this assertion in the

form of a number of newspaper articles discussing New York City legislative measures relating to the NYPD's responses to EDPs. (See Pl's 56.1 at Ex. 2, 4, 5.) Without verification, the Court finds that the articles standing alone are not substantiated evidence of an unconstitutional city-wide policy.[2]

Thus, Plaintiff has failed to establish a "widespread pattern of behavior that constituted "a custom or usage with the force of law" or "the constructive acquiescence of senior policy-making officials." Patterson v. Cnty. of Oneida, 375 F.3d at 226). "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir.1993), overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). The lack of any evidence of a municipal custom or policy requires the Court to grant summary judgment of this claim.

---

[2] See Richardson v. Nassau County, 277 F.Supp.2d 196, 204 (E.D.N.Y. 2003) (finding one-paragraph newspaper article, cited by plaintiff, to be insufficient to show municipal policy); Allen v. City of New York, 480 F.Supp.2d 689, 720 (S.D.N.Y.2007) (finding that newspaper article reporting that inmates at Rikers Island had been routinely beaten and that correctional officers had taken steps to conceal these assaults was inadmissible hearsay and could not be used to demonstrate an unconstitutional policy, custom, or practice); Gonzalez v. City of New York, 354 F.Supp.2d 327, 347 n.29 (S.D.N.Y. 2005) (finding newspaper articles offered in support of plaintiffs' pattern and practice claims to be "inadmissible hearsay and unusable to defeat summary judgment").

C.  <u>Negligent Hiring, Training, Supervision, and Retention</u>

Plaintiff also asserts the state law claim of Negligent Hiring, Training, Supervision, and Retention. To maintain a claim against a municipal employer for the "negligent hiring, training, and retention" of a tortfeasor under New York law, a plaintiff must show that the employee acted "outside the scope of [their] employment." <u>Gurevich v. City of New York</u>, No. 06 Civ. 1646(GEL), 2008 WL 113775, at *6 (S.D.N.Y. Jan. 10, 2008) (internal quotation marks omitted) (collecting cases). "If the employee acted within the scope of [his or] her employment, the employer and the employee's supervisors may be held liable for the employee's negligence only under a theory of respondeat superior." <u>Velez v. City of New York</u>, 730 F.3d 128, 136-37 (2d Cir. 2013)

"A cause of action for negligent hiring or retention requires allegations that the employer . . . failed to investigate a prospective employee notwithstanding knowledge of 'facts that would lead a reasonably prudent person to investigate that prospective employee.'" <u>Richardson v. City of New York</u>, No. 04 Civ. 05314, 2006 WL 3771115, at *13 (S.D.N.Y. Dec. 21, 2006) (quoting <u>Adorno v. Correctional Services Corp.</u>, 312 F.Supp.2d 505, 518 (S.D.N.Y. 2004)). "When an employee is acting within the scope of her employment, her employer may be held liable for [her] negligence only under a theory of respondeat superior, and no claim may proceed against the employer for negligent hiring or retention." <u>Colodney v. Continuum Health Partners, Inc.</u>, No. 04 Civ. 106(HB), 2004 WL 829158, at *8

(S.D.N.Y. Apr.15, 2004) (citing <u>Karoon v. N.Y.C. Transit Auth.</u>, 659 N.Y.S.2d 27, 29 (1st Dep't 1997)).

Here, the police arrived at the scene pursuant to a 911 request. The officers intervened with the domestic dispute at Plaintiff's request. The officers then designated Plaintiff as an EDP according to clear protocols. The ambulance report confirms that Plaintiff was agitated and potentially a danger to herself and others. Defendants have therefore made a credible showing that their actions fell squarely within the scope of their employment.

Even if the officers were not acting within the scope of their employment, Plaintiff has not submitted any evidence of the City's hiring, training, supervision or retention policies generally or as applied to the defendant officers. Rather, Plaintiff argues that a question of fact exists as to whether the officers were acting within the scope of their employment. The Court disagrees. "Summary judgment is appropriate where there is no proof that the employer (here, the City or the NYPD) acted negligently in hiring, training, supervising or retaining an employee." <u>Tsesarskaya v. City of New York</u>, 843 F. Supp.2d 446, 464 (S.D.N.Y. 2012) (citing a number of relevant cases). Accordingly, Plaintiffs claim for negligent hiring and retention must be dismissed.

## III. CONCLUSION

Based upon the parties' submissions, Defendants' Partial Motion Pursuant to 56(c) is hereby GRANTED.

SO ORDERED.

Dated:  October 29, 2014                     _____/s/_____
           Brooklyn, New York                     Sterling Johnson, Jr., U.S.D.J.